UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>– against –<br><br>LINO ARDINES,<br><br>Defendant-Appellant. | **MEMORANDUM AND ORDER AFFIRMING JUDGMENT**<br><br>No. 12-CR-364 |

**J**ACK **B. W**EINSTEIN**, Senior United States District Judge:**

## Table of Contents

I.   Introduction ........................................................................................................................... 1
II.  Facts ....................................................................................................................................... 2
III. Procedural History ................................................................................................................. 4
IV. Discussion .............................................................................................................................. 7
   A.   Motion to Suppress........................................................................................................ 7
      1.   Evidence Seized from *Terry* Stop............................................................................ 7
      2.   Statement Made to Officer McLaughlin................................................................... 9
   B.   Application of State Criminal Law ............................................................................. 11
   C.   Combination of Pretrial Hearings and Trial ................................................................ 15
   D.   Sufficiency of Evidence .............................................................................................. 16
V.  Conclusion ........................................................................................................................... 17

**I. Introduction**

Defendant, Lino Ardines, appeals from a conviction by a magistrate judge, No. 11-MJ-1217 (VPP), of two petty offenses: (1) willful removal of government property without authorization, 38 C.F.R. § 1.218(b)(4); and (2) attempted criminal possession of stolen property in the fifth degree, New York Penal Law § 165.40, assimilated pursuant to 18 U.S.C. § 13.

1

At the heart of Ardines' appeal is the denial of a motion to suppress evidence seized and statements made to the apprehending security officers at a Veteran's Affairs hospital. He also contests the magistrate judge's decision to combine a pretrial suppression hearing with trial, jurisdiction over an assimilated state criminal statute, and the sufficiency of evidence. For the reasons stated below, the judgment of the magistrate judge is affirmed.

## II. Facts

Ardines was employed as a member of the housekeeping staff at the Veteran's Affairs Harbor Healthcare System ("V.A. Hospital") in Brooklyn, New York. *See* Appendix, *United States v. Ardines*, No. 12-CR-364 (E.D.N.Y. Jan. 31, 2013), ECF No. 41-1 ("App."), at 416-22 (Suppression and Bench Trial Tr., Apr. 27, 2012). He had worked at the V.A. Hospital for twenty-six years. *Id*. at 54 (Def. Mem. L. Supp. Mots. To Dismiss and To Suppress).

On June 30, 2011, slightly after 2:30 p.m., V.A. Police Officer Brian Walsh observed defendant walking toward a bus stop located in an inner driveway of the hospital's parking lot. App. at 216 (Suppression and Bench Trial Tr., Apr. 26, 2012). Walsh was standing at the guard booth at the hospital's front gate. *Id*. Hospital employees are prohibited from exiting the building from certain doors that do not have security guard posts. *Id*. at 219. Walsh concluded that, based on the direction from which Ardines was walking, he had not exited, as required, from the front entrance of the hospital—"the employee entrance where you're supposed to enter and exit th[e] facility." *Id*. at 279. It was determined at trial that defendant had used an unauthorized, unguarded exit to leave the building. *Id*. at 459 (findings of fact).

Ardines was carrying two bags: a canvas bag slung over his shoulder and a gray plastic bag. *Id*. 216-17 (Suppression and Bench Trial Tr., Apr. 26, 2012). The gray plastic bag had the markings of the Veterans Canteen Service ("VCS"), the hospital commissary. *Id.* at 248. The

VCS sells goods to hospital employees. *Id*. Walsh observed defendant "conceal" the gray plastic bag behind a garbage receptacle next to the bus stop. *Id.* at 459 (findings of fact). Defendant then stepped into the shelter, a waiting area next to the bus stop. *Id*.

Several days earlier, Walsh had observed defendant exhibit similar behavior. *Id*. at 221-22 (Suppression and Bench Trial Tr., Apr. 26, 2012). He had seen defendant "get on the bus with a very, very large bag." *Id*. at 221. Defendant "didn't come through the front door on that day either." *Id*. at 222. What raised the officer's suspicion on the day of the stop was that Ardines was carrying the VCS "bag and . . . hid it [behind the trash can], and [that he] knew [Ardines] didn't come through the front door" of the hospital on his way to the bus stop. *Id*. at 223.

When the bus arrived, defendant retrieved the bag from behind the garbage receptacle. *Id.* at 217. Walsh then approached the bus and spoke to defendant, preventing him from boarding the bus. *Id*.

Walsh asked defendant which exit he had used to leave the hospital. *Id.* at 218. Defendant responded that he had left through the main exit of the hospital. *Id*. Based on his observations, Walsh knew that this was not true. *Id*. He asked what was in the gray plastic bag, and defendant responded that there were gloves in the bag. *Id*. Defendant then voluntarily showed Officer Walsh the contents of the bag—ten boxes of latex hospital gloves. *Id*. They were the same brand as those used in the hospital. *Id*. at 284; *see also id*. 454 (findings of fact). Walsh asked whether defendant had a receipt for the gloves, to which he responded: "aw, come on, they're only gloves." *Id*. at 218 (Suppression and Bench Trial Tr., Apr. 26, 2012). Walsh then inquired whether defendant had a note from his supervisor permitting him to remove the gloves from the hospital. *Id*. at 219. No note was produced. *Id*.

3

Walsh then said: "come on, let's go." *Id*. To which defendant asked: "where are we going?" *Id*. Officer Walsh responded: "you know where we're going, come on." *Id*. Ardines was led by Walsh into a police room located inside the V.A. Hospital. *Id*. at 460 (findings of fact). The lower court determined that this interaction constituted an arrest. *Id.*

Shortly after, Thomas McLaughlin, a criminal investigator of the V.A., entered the police room and noticed that defendant seemed "agitated." *Id*. at 278, 287 (Suppression and Bench Trial Tr., Apr. 26, 2012). He brought Ardines to his office in order, as he testified, to calm him down and "get some air." *Id*. at 287. No words were exchanged between defendant and McLaughlin on the way to his office. *Id*. Once in the office, McLaughlin asked defendant to take a seat and "relax." *Id.* at 288. He informed defendant of the seriousness of his crime, warning that a citation could potentially affect his employment at the V.A. *Id*. Defendant responded: "I just need these gloves for my mother, she's very sick." *Id*.

McLaughlin immediately informed defendant not to say another word about the incident. *Id*. Based on the evidence admitted at trial, defendant was alone with McLaughlin in his office for twenty-two minutes. *Id.* at 310. During that time, Ardines was not *Mirandized*.

**III. Procedural History**

All proceedings, including trial, were before the magistrate judge, a practice permitted when a defendant is charged with a petty criminal offense. *See* 28 U.S.C. § 636(a)(3) (magistrate judge's power to preside over trials if designated to do so by district court pursuant to 18 U.S.C. § 3401(a)); U.S. Dist. Ct. S. & E.D.N.Y. Civ. R. 72.1 (designating magistrate judge with authority to exercise jurisdiction over trials).

Defendant was initially charged on June 30, 2011 with: (1) theft of government property, 18 U.S.C. § 641, and (2) criminal possession of stolen property in the fourth degree, New York

4

Penal Law § 165.45, for stealing ten boxes of latex gloves from the hospital. App. at 3 (violation notices). These offenses are *felonies*.

Those charges were later dismissed in favor of two lesser offenses: the *misdemeanors* of (1) willful removal of government property without authorization, 38 C.F.R. § 1.218(b)(4), and (2) attempted criminal possession of stolen property in the fifth degree pursuant to New York Penal Law § 165.40. App. at 14-15 (Status Conf. Tr., Feb. 29, 2012).

On March 9, 2012, defendant filed a pretrial motion seeking (1) to dismiss the assimilated New York Penal Law charge, and (2) to suppress the ten boxes of gloves recovered and certain statements made to Officers Walsh and McLaughlin on the day of his arrest. *See* App. at 47 (Def. Mot. to Dismiss and to Suppress).

Argument on the motions was heard by the magistrate judge on April 3, 2012. *See* Opin. and Order, *United States v. Ardines*, No. 11-MJ-1217 (Apr. 16, 2012), ECF No. 22 ("Apr. 16 M.J. Opin."). The magistrate judge explained after argument that dismissal of the state criminal charge was not warranted under *Lewis v. United States*, 523 U.S. 155 (1998), but that an evidentiary hearing would be required on the suppression issues. *Id*. The suppression hearing was ordered to be held immediately prior—and on the same day as—the trial for Ardines's conduct. *Id*.

Two days before the trial, the government moved to combine the suppression hearing and trial into one proceeding on the ground that the testimony for both proceedings would be virtually identical. *See* Gov't Ltr., *United States v. Ardines*, No. 11-MJ-1217 (Apr. 24, 2012), ECF No. 24. Defendant objected, arguing that no "good cause" under Federal Rule of Criminal Procedure 12(d) existed to avoid "decid[ing] every pretrial motion before trial." *See* Def. Ltr., *United States v. Ardines*, No. 11-MJ-1217 (Apr. 24, 2012), ECF No. 25.

5

In an order dated April 24, 2012, the magistrate judge held that the proceedings would be combined. Opin. and Order, *United States v. Ardines*, No. 11-MJ-1217 (Apr. 24, 2012), ECF No. 26. No potential for detriment to the defendant was found. *Id*. at 1. According to the magistrate judge, "[b]ecause the evidence concerning both the suppression issues and the issue of guilt substantially overlap," the government should be permitted "to put on all of the evidence on both issues and thus avoid having its witnesses testify twice about essentially all of the same matters." *Id*. "As this is a bench trial," he observed, "the court need not hear the same testimony twice to evaluate it." *Id*. at 2.

The combined suppression hearing and trial were held on April 26-27, 2012. Suppression was denied. App. at 398 (Suppression and Bench Trial Tr., Apr. 27, 2012). Ruled was that the initial stop by Officer Walsh, during which he seized the ten boxes of latex gloves, was a *Terry* stop only needing reasonable suspicion, which existed. *Id*. at 399. Because there was no custodial interrogation, the officers were not required to inform defendant of his *Miranda* rights. *Id.* at 410. All evidence seized from, and statements made by, defendant on the day of his arrest were deemed admissible at trial. *Id*.

Defendant was found guilty on both counts. *Id.* at 464. He was ordered to pay a $25 fine and a special assessment of $10 for each charge. *Id.* at 480.

An appeal was taken on May 11, 2012. Notice of Appeal, *United States v. Ardines*, No. 11-MJ-1217 (May 11, 2012), ECF No. 31. Appellant contends that the trial judge committed reversible error in: (1) denying the motion to suppress the boxes of gloves and statements made to Walsh; (2) finding that defendant was not interrogated by McLaughlin and admitting statements made to him by defendant; (3) improperly assimilating the state criminal statute; (4) not having good cause to combine the suppression hearing and trial; and (5) convicting on

insufficient evidence. Br. for Def.-Appellant, *United States v. Ardines*, No. 12-CR-364 (E.D.N.Y. Jan. 31, 2013), ECF No. 41 ("Pet'r Br."), at 16-19. The appeal is treated exactly the same as if it were "an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. Proc. 58(g)(2)(D).

**IV. Discussion**

   **A. Motion to Suppress**

   **1. Evidence Seized from *Terry* Stop**

Admissibility of evidence seized by Officer Walsh, and defendant's statement to him—"aw, come on, they're only gloves"—hinges on the legality of the stop. If Officer Walsh did not have reasonable suspicion to conduct a *Terry* stop, any resulting evidence should have been excluded. *See Mosby v. Senkowski*, 470 F.3d 515, 520 (2d Cir. 2006) (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)).

Under *Terry v. Ohio*, 392 U.S. 1, 30 (1968), "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). A "*Terry* stop" allows police to pursue a limited investigation when they lack information necessary to establish probable cause to arrest. *Adams v. Williams*, 407 U.S. 143, 145-46 (1972).

The officer must be able to articulate specific and objective facts, taken together with rational inferences from those facts, in order to support a *Terry* stop. *Terry*, 392 U.S. at 21. "Like probable cause, reasonable suspicion is determined based on the totality of the circumstances but 'the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence

7

standard.'" *United States v. Elmore*, 482 F.3d 172, 179 (2d Cir. 2007) (quoting *United States v. Arvizu*, 534 U.S. 266, 273-74 (2002)). "In determining whether the officer acted reasonably in such circumstances, due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry,* 392 U.S. at 27; *accord United States v. Mendenhall*, 446 U.S. 544, 563 (1980). The officer may observe "a series of acts, each of them perhaps innocent in itself, but which taken together warrant further investigation." *Terry,* 392 U.S. at 22. The conduct that informs an officer's reasonable suspicion does not need to be illegal. *Sokolow*, 490 U.S. at 9.

Defendant contends that Officer Walsh's observations amount to "innocuous everyday behavior," Pet'r Br. 46, that, viewed separately, are not "inherently suspicious." *Id*. at 48. In *Arvizu*, the Supreme Court expressly rejected "this sort of divide-and-conquer analysis." 534 U.S. at 274-75. "The proper inquiry is not whether each fact considered in isolation denotes unlawful behavior, but whether all the facts taken together support a reasonable suspicion of wrongdoing." *United States v. Lee*, 916 F.2d 814, 820 (2d Cir. 1990).

Here, Officer Walsh observed a series of acts which might not indicate criminal behavior when examined individually but, when taken together, warranted further investigation. The basis for conducting a *Terry* stop was supported by the following specific and articulable objective facts: (1) defendant had not exited from the main entrance of the building as required of employees; (2) he was carrying two bags, one of which bore the markings of the VCS, the hospital commissary, and appeared to be full of something; (3) one of the bags was placed by defendant outside of the bus shelter and out of view, behind a garbage receptacle, while he was waiting inside the shelter; and (4) he had been observed before engaging in similar behavior. App. at 399 (Suppression and Bench Trial Tr., Apr. 27, 2012).

Viewing defendant's acts as a whole, together with rational inferences, an objective officer would have had sufficient reasonable suspicion to warrant stopping defendant and investigating the matter of possible pilfering by an employee. Both the boxes of gloves and statements made by defendant to Walsh were properly deemed admissible at trial.

**2. Statement Made to Officer McLaughlin**

It is undisputed that defendant was in custody and not *Mirandized* during his encounter with Officer McLaughlin. Gov't. Br. Opp. to Pet'r Br., *United States v. Ardines*, No. 12-CR-364 (E.D.N.Y. Apr. 8, 2013), ECF No. 48, at 42. Defendant contends that his statement to McLaughlin that he needed the gloves "for my mother" was the product of a custodial *interrogation* which necessitated a *Miranda* warning. Pet'r. Br. 53. No such warning having been issued, defendant argues that any incriminating statements made to McLaughlin must be suppressed. *Id*.

The issue in the instant case is whether the circumstances surrounding defendant's interactions with police inside of the V.A. Hospital amounted to the functional equivalent of an interrogation that would likely elicit an incriminating response. *See Rhode Island v. Innis*, 446 U.S. 297, 302 (1980). "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (emphasis added). Prior to subjecting a suspect to a custodial interrogation, an officer must offer a series of warnings designed to add a "measure of protection against coercive police practices." *Innis*, 446 U.S. at 301.

A custodial interrogation is initiated—and a *Miranda* warning is required—when "a person has been taken into custody or otherwise deprived of his freedom of action in any

9

significant way." *Miranda*, 384 U.S. at 444. An interrogation consists not only of express questioning by an officer but its "functional equivalent." *Innis*, 446 U.S. at 301. It is defined by the perceptions of the defendant—not the subjective intent of the police. *Id.* A practice that the police should reasonably know will likely elicit an incriminating response amounts to an interrogation. *Id.* at 302. But not every statement by an officer amounts to an interrogation that requires the prophylactic protections of *Miranda*. *Cf. Acosta v. Artuz*, 575 F.3d 177, 191-92 (2d Cir. 2009). Thus, when a defendant is taken into custody, but not interrogated, there is no requirement to inform him of his Miranda rights. *Innis*, 446 U.S. at 300.

McLaughlin testified that he never informed defendant of his *Miranda* rights because he never intended to conduct an interrogation or to "enhance[e] any type of arrest." App. at 289 (Suppression and Bench Trial Tr., Apr. 26, 2012). He indicated that only out of concern for defendant's health did he ask him to accompany him to his office in order to "get some air." *Id.* at 287. Once in the office, McLaughlin informed defendant of the seriousness of his crime and the potential effect it could have on his employment at the V.A. *Id.* at 288. No other words were exchanged between defendant and McLaughlin while they sat in his office. *Id.* Video surveillance shows that they sat in the room for a total of twenty-two minutes. *Id.* at 310. At trial, McLaughlin's account of what occurred was appropriately found to be credible. *Id.* at 400 (Suppression and Bench Trial Tr., Apr. 27, 2012).

Defendant questions McLaughlin's assertion that he took defendant to his office to calm him down. Pet'r. Br. 57. Pointing to the fact that McLaughlin mentioned the seriousness of the crime, a comment that would likely increase agitation, defendant contends that his interaction with McLaughlin amounted to the "functional equivalent" of a custodial interrogation. *Id.* McLaughlin should have reasonably known, according to defendant, that such a warning could

potentially elicit an incriminating response. *Id.* (referring to the standard set forth in *Innis*, 446 U.S. at 300-01). Without being informed of his *Miranda* rights prior to the "interrogation," he argues, statements made to McLaughlin during that time should have been suppressed at trial.

The magistrate judge's ruling, that McLaughlin's comment amounted to a declaratory statement, is not clearly erroneous. App. at 404 (Suppression and Bench Trial Tr., Apr. 27, 2012). McLaughlin did not reference the evidence or any specific aspects of the case. *Cf. Acosta*, 575 F.3d at 191-92; *Rosa v. McCray*, 396 F.3d 210, 220-21 (2d Cir. 2005). No functional equivalent of an interrogation occurred; nor did a statement that would elicit an incriminating response. *See Innis*, 446 U.S. at 302.

In any event, even if a confession is "erroneously admitted in violation of the defendant's *Miranda* rights, this constitutional error is subject to a harmless error analysis." *See Zappulla v. New York*, 391 F.3d 462, 466 (2d Cir. 2004). A conviction may be upheld if the error is found to be harmless beyond a reasonable doubt. *Arizona v. Fulminante*, 499 U.S. 279, 308 (1991). In light of the legality of Walsh's initial *Terry* stop and the overwhelming proof produced as a result of that stop alone, admission of defendant's statement to Officer McLaughlin was harmless if made in error.

## B. Application of State Criminal Law

In addition to violating federal law, defendant was charged and convicted of *attempted* criminal possession of stolen property in the fifth degree, as defined in New York Penal Law § 165.40. *Id.* He contends that the magistrate judge improperly denied a pretrial motion to dismiss this charge for lack of jurisdiction.

The Assimilative Crimes Act ("ACA") applies local criminal law to conduct "not made punishable by any enactment of Congress" but which occurs on a federal enclave. 18 U.S.C. § 13(a). It effectively provides federal jurisdiction over prosecution of state crimes.

*Lewis v. United States* provides a two-step test for determining whether a state crime may be assimilated pursuant to the ACA. 523 U.S. at 164. A court must first ask: "is the defendant's 'act or omission . . . made punishable by *any* enactment of Congress.'" *Id.* (emphasis in original; quoting 18 U.S.C. § 13(a)). If the answer to this question is no, then the state criminal law may be assimilated pursuant to the ACA. *Id.* The question is one focused on a defendant's underlying conduct—not necessarily the crime for which he is charged. *Id*. at 168-69.

If the relevant underlying conduct is made penal by federal law, an additional inquiry is required into whether the applicable federal law precludes application of the state law for any one of three reasons: "because [1] its application would interfere with the achievement of a federal policy[;] . . . [2] the state law would effectively rewrite an offense definition that Congress carefully considered[;]. . . or [3] . . . federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue." *Id*. at 164-65 (internal citations omitted).

New York Penal Law § 165.40 criminalizes "possession of stolen property in the fifth degree when [a defendant] knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof." N.Y. Penal Law § 165.40. There are three federal statutes identified by defendant as criminalizing the same conduct and precluding jurisdiction over the state criminal statute: (1) 18 U.S.C. § 641 ("Whoever receives, conceals, or retains [a thing of value of the United States or of any department or agency thereof] with intent to convert it to his use or gain, knowing it to have been

embezzled, stolen, purloined or converted"), (2) 18 U.S.C. § 662 ("Whoever, within the special maritime and territorial jurisdiction of the United States, buys, receives, or conceals any money, goods, bank notes, or other thing which may be the subject of larceny,"), and (3) 18 U.S.C. § 661 ("Whoever, within the special maritime and territorial jurisdiction of the United States, takes and carries away, with intent to steal or purloin, any personal property of another."). Pet'r. Br. 37-38.

Based on the conduct charged, the magistrate judge held, in a well-reasoned opinion, that "although three federal statutes criminalize conduct somewhat related to the conduct criminalized by the state statute in question, there remain gaps that the state statute fills." Apr. 16 M.J. Opin. at 2; *see also United States v. Rogers*, No. 12-MJ-207 VVP, 2012 WL 1834456, at *1 (E.D.N.Y. May 21, 2012) (holding that where the question of assimilation arises pretrial the court should look to the charging language in the accusatory instrument in defining the defendants conduct). Whereas the state statute criminalizes simple possession of stolen property, the three federal statutes "require something more than simple possession of stolen property, and thus none of them punish the same wrongful behavior as that covered by the state law whose violation is charged here." Apr. 16 M.J. Opin. at 2. Defendant was charged with *attempted* possession of stolen property under state law; none of the federal statutes involved explicitly criminalizes *attempts*. *Id.* at 4. It is the practice in incorporating attempt into federal criminal statutes to limit the application to specific crimes. *See, e.g.*, 18 U.S.C. § 32 (a)(8) (destruction of aircraft or aircraft facilities); 18 U.S.C. § 242 (civil rights).

It is insignificant that the magistrate judge based his assimilation analysis on conduct charged rather than conduct proven at trial. Even assuming defendant's proven conduct is punishable by federal law, the state crime charged against defendant would still be properly

13

assimilated under *Lewis*' second prong. *See Lewis*, 523 U.S. at 165-66. "[A] substantial difference in the kind of wrongful behavior covered (on the one hand by the state statute, on the other, by federal enactments) will ordinarily indicate a gap for a state statute to fill—unless Congress, through the comprehensiveness of its regulation, or through language revealing a conflicting policy, indicates to the contrary in a particular case." *Id.* at 165 (internal citations omitted). It was not erroneous for the magistrate judge to hold that the three federal statutes cited by defendant do not indicate a federal "intent to punish conduct such as [Ardines's] to the exclusion of the particular state statute at issue." *Id*. at 166.

Assimilating state law "provides additional flexibility to bring the less serious charge of attempted possession of stolen property, an offense which carries a maximum term of imprisonment of but three months." Apr. 16 M.J. Opin. at 5. Each of the three federal statutes distinguishes between offenses that involve property in excess of $1,000 in value. *See* 18 U.S.C. §§ 661, 662, 641. An offense involving property worth more than $1,000 is treated as a felony, carrying with it a maximum term of imprisonment exceeding one year. *Id*. An offense involving property worth $1,000 or less is treated as a misdemeanor, carrying with it a maximum term of imprisonment of one year or less. *Id.* Where the property value involved is significantly lower than $1,000, the state statute allows punishment that more accurately reflects the seriousness of the crime. Apr. 16 M.J. Opin. at 5. Assimilating the lesser state charge, a petty offense, has the benefit of sparing the government and the court the burden and expense of conducting a jury trial for even the most minor theft. *Id. Cf.* 18 U.S.C. § 3571; *Baldwin v. New York*, 399 U.S. 66 (1970).

No legal error was committed by denying Ardines's motion to dismiss the New York Penal Law § 165.40 charge for lack of jurisdiction.

14

## C. Combination of Pretrial Hearings and Trial

Ardines challenges the magistrate judge's decision to combine the suppression hearing and trial. Federal Rule of Criminal Procedure 12(d) directs "[t]he court [to] decide every pretrial motion before trial unless it finds *good cause* to defer a ruling." Fed. R. Crim. P. 12(d) (emphasis added). Implicit in the rule is that pretrial motions need not always be decided before trial.

Here, it was appropriate for the magistrate judge to find good cause in combining the suppression hearing with the trial. "In reviewing proceedings before a judge alone, appellate courts may presume that improper evidence and comments have been rejected, at least absent a showing of substantial prejudice." *United States v. Reeves*, 348 F.2d 469, 469 (2d Cir. 1965) (per curiam) (internal quotation marks and citation omitted). *See also United States v. Duran-Colon*, 252 F. App'x 420, 423 (2d Cir. 2007) (holding that in the context of a bench trial the factfinder knows the purpose for which evidence is admitted and is presumed to rest the verdict on the proper inferences to be drawn from such evidence). The fact that testimony for both the hearing and trial required the same witnesses provides additional support for a finding of good cause. *See United States v. Williams*, 644 F.2d 950, 953 (2d Cir. 1981) (good cause for deferral of consideration on pretrial motion where it was "substantially founded upon and intertwined with the evidence to be presented at trial").

Witnesses could be recalled by the defense for further cross-examination after the decision on suppression was announced. In the case of an experienced fact finder such as the magistrate judge it can be assumed that he would keep evidence introduced only on the suppression issue out of his guilt calculations. Here, on several occasions, the assigned magistrate judge worked diligently not to—and did not—confuse facts applicable to the different proceedings. *See, e.g.,* App. at 382 (Suppression and Bench Trial Tr., Apr. 27, 2012) ("The

15

Court: So we'll have time to review the record and see precisely what I'm permitted to consider or not consider following the trial on guilt. So I'll ask you both to please go back over the record and make sure that I'm adequately informed about what the record discloses in that regard, okay?").

### D. Sufficiency of Evidence

Defendant contends that the government failed to provide sufficient evidence to support the trial court's conclusion of guilt. Pet'r. Br. 20. A defendant seeking to overturn a conviction based upon insufficiency of the evidence bears a "heavy burden." *United States v. Aguilar*, 585 F.3d 652, 656 (2d Cir. 2009). "[A] reviewing court must sustain [a] guilty verdict if, 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Desnoyers*, 637 F.3d 105, 109 (2d Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). The evidence is to be viewed in its totality—"not in isolation but in conjunction." *United States v. Geaney*, 417 F.2d 1116, 1121 (2d Cir. 1969), *cert. denied*, 397 U.S. 1028 (1970). The government's case need not exclude every possible hypothesis of innocence. *United States v. Martinez*, 54 F.3d 1040, 1043 (2d Cir. 1995). The verdict may be based entirely on inferences from circumstantial evidence. *See e.g., id*. at 1043.

Drawing reasonable inferences favorable to the government, a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. The judgment rendered was based on the following evidence: (1) the gloves seized from defendant were the same brand as those used by the hospital; (2) defendant left from an exit where he would less likely be observed; (3) defendant secreted the bag containing the gloves behind a garbage receptacle while waiting for the bus; (4) statements made by defendant to officers Walsh and

McLaughlin reflected guilt; and (5) defendant's statement claiming he used the main exit, when that was known by Officer Walsh not to be the case. App. at 462-64 (findings of fact).

The video recording of those exiting from the main entrance—supporting the conclusion that defendant was trying to avoid detection—was not available at the time of the stop. But it did support evidence of guilt and it supported the government witness Walsh's credibility when he testified that he did not see defendant leave from the exit he should have used.

Viewing the case as a whole, there was more than sufficient evidence to support the magistrate judge's conclusion of guilt on both counts.

## V. Conclusion

The judgment of the magistrate judge is affirmed. No costs or disbursements are imposed.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: May 14, 2013
Brooklyn, New York